[Civ. No. 8215.   Third Dist.   Nov. 9, 1953.]

WAYNE E. HALL et al., Appellants, v. EDWIN J. BURROWS, Respondent.

Weis & Weis for Appellants.

Manwell & Manwell for Respondent.

PEEK, J.—The present controversy arose out of defendant's forceful use of a portion of plaintiffs' land for the purpose of draining defendant's land. At the conclusion of the trial the court found in favor of defendant and it is from the judgment entered pursuant thereto and from the order denying the motion for a new trial that plaintiffs have now appealed.

█ Plaintiffs and defendant are adjoining landowners, having acquired their properties in 1945. In 1930 their predecessors in interest executed an agreement for the construction and maintenance of a jointly owned irrigation system. As a part of the plan defendant's predecessors conveyed in fee to plaintiffs' predecessors a 40-foot strip beginning at the Sacramento River on the west and extending easterly across the southerly end of defendant's land, and continuing for a short distance on to plaintiffs' property. On this strip an irrigation canal with parallel borrow pits was constructed. At that time the upper portion of defendant's land was rough, had never been irrigated and contained a pond-like depression. In 1942 Reclamation District 70 built a drainage ditch extending from the pond easterly across the property line and thence running southerly through plaintiffs' land, eventually emptying into a drainage ditch likewise constructed by the district. There was no grant of right of way for this ditch and apparently it had never carried any water. In 1945 defendant leveled his land, filling in the pond and the drain which led to plaintiffs' land. Thereafter plaintiffs likewise filled that portion of the drain on their property. The defendant, in leveling his land, graded it to the southeast corner of his property. At the outset of defendant's farming of his property no irrigated crops were grown. However, since 1947 he has grown irrigated crops on his land, draining the excess runoff from such irrigation into the said borrow pit.

On plaintiffs' land at a point approximately 50 feet south of said borrow pit there is a drainage ditch built by said reclamation district. The borrow pit is connected to such ditch by means of a 24-foot pipe which was purchased and paid for by plaintiffs but was installed by the district. In 1947 the defendant admittedly came upon plaintiffs' land without permission, and excavated a drainage canal or ditch approximately 2 feet deep and 3½ feet wide along the course of the old borrow pit from the southwest corner of the plaintiffs' property to the drain pipe.

.

Thereafter plaintiffs' action was instituted alleging that defendant, unless restrained, would continue to trespass upon plaintiffs' land and occupy the same for drainage purposes. It was also alleged that plaintiffs had suffered certain damages. Their prayer requested that defendant be restrained and enjoined from so using plaintiffs' land. The question of damages, however, has since been waived.

The court found that defendant was not upon plaintiffs' land wrongfully but merely made "a slight alteration in the drainage program affecting property of plaintiffs and defendant in conjunction with the design for drainage and irrigation of land furnished by Reclamation District 70 . . . and defendant did not damage plaintiffs' lands or any rights of plaintiffs thereby." The court further found that at the time the 1930 agreement was executed it was "contemplated by the predecessors in interest of the parties herein that both of said parties could irrigate their lands and drain the same in ditches, canals and drains heretofore used for that purpose."

It is appellants' main contention that regardless of whether or not any damages resulted to them, the acts committed by defendant could, by usage, ripen into an easement, and therefore they are entitled to the injunction as prayed.

The evidence shows without contradiction that at the inception of this proceeding defendant had no right of way either by grant or by usage across plaintiffs' land. The record is likewise barren of any evidence to indicate that there was a preexisting drainage system for artificial water which was continued under the agreement (Civ. Code, § 1104) or that it was contemplated that such a use was to be made of the irrigation system. The district's use of the borrow pit on plaintiffs' land does not help defendant. Such use was shown to have been only permissive. The defendant's use, however, is conclusively shown to have been adverse.

The scope of the 1930 agreement was expressly limited to the creation of an irrigation system. It created no implied easement for drainage. (See *Fischer* v. *Hendler*, 49 Cal. App.2d 319 [121 P.2d 792].) In fact it specifically provided that the grantors (defendant's predecessors in interest) waived "any rights they may have to complain or to recover damages by reason, at any time, of seepage water from said ditch," a condition entirely repugnant to defendant's present contention. Furthermore, it should be noted that it is the defendant, the successor of the grantor in the 1930 agreement, who is claiming the implied easement. Under the circum-

stances herein the easement, if any, of necessity, would have to arise by reservation rather than by grant. However, since there is nothing in existence at the time of the grant, no easement could have so arisen. As previously mentioned the adverse user by defendant was not of sufficient duration, and he makes no contention in that regard.

It may be true, as the trial judge concluded, that the acts of defendant in tying onto the existing facilities on plaintiffs' property made a reasonable use of such existing facilities; nevertheless those facilities do not belong to respondent and he simply had no right to use them.

The judgment and order are reversed.

Van Dyke, P. J., and Schottky, J., concurred.